CODY Z. WINCHESTER (7197)
JARED L. CHERRY (11534)
**PHILLIPS WINCHESTER, LLC**
4001 South 700 East, Suite 500
Salt Lake City, Utah 84107
Tel: (801) 935-4932
Fax: (801) 935-4936
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| **EVERMORE PARK, LLC**, a Delaware Limited Liability Company,<br><br>　　　　Plaintiff,<br><br>v.<br><br>**TAYLOR SWIFT**, an individual, **TAS RIGHTS MANAGEMENT, LLC**, a Tennessee Limited Liability Company, and **TAYLOR NATION, LLC**, a Tennessee Limited Liability Company,<br><br>　　　　Defendants. | Civil Action No.: 2:21-cv-00069<br><br>Honorable: Magistrate Judge Daphne A. Oberg |

**COMPLAINT**

Plaintiff Evermore Park, LLC ("Evermore"), for its claims against defendants Taylor Swift, TAS Rights Management, LLC, and Taylor Nation, LLC ("Defendants"), alleges as follows:

**PARTIES**

1.　　Evermore Park, LLC is a Delaware limited liability company with its principal place of business at 382 South Evermore Lane, Pleasant Grove, Utah 84062.

2.      Taylor Swift is an individual and resident of the state of Tennessee.  TAS Rights Management, LLC is a Tennessee limited liability company with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204.

3.      Taylor Nation, LLC is a Tennessee limited liability company with its principal place of business at 718 Thompson Lane, Suite 108256, Nashville, Tennessee 37204.

## JURISDICTION AND VENUE

4.      This action involves infringement of U.S. Trademark Reg. No. 4,720,740 for EVERMORE, U.S. Trademark Reg. No. 5,329,899 for EVERMORE, U.S. Trademark Reg. No. 5,617,849 for EVERMORE, and U.S. Trademark Reg. No. 5,597,168 for EVERMORE (the "Evermore Trademark Registrations").

5.      Evermore is the owner of the Evermore Trademark Registrations.

6.      This action also involves infringement of Evermore's common law trademark rights in the EVERMORE Trademark.

7.      This Court has subject matter jurisdiction over the claims relating to the Lanham Act (15 U.S.C. §§ 1125 *et seq.*) and pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 28 U.S.C. §1338(a) (any act of Congress relating to copyrights, patents, and trademarks).

8.      Plaintiff's principal place of business is in this judicial district, and the damage inflicted by Defendants is directed toward and felt in this district.

9.      Defendants are subject to either general jurisdiction or specific jurisdiction in this district.

10.      Defendants conduct substantial business in this district, including the sale of music, films, merchandise, and tickets for live performances.

11.     For example, Ms. Swift's "1989 World Tour" included a concert in Salt Lake City.  One outlet reported the average cost of a ticket being $326 and noted that the average ticket price "tops all Utah Jazz games in that timespan, as well as concerts by One Direction, Justin Bieber, George Strait and many others"[1] between 2010 and 2015.

12.     Ms. Swift's film *Miss Americana* premiered at the Sundance Film Festival in Park City, Utah, on January 23, 2020, and Taylor Swift appeared at the premier to greet fans and "posed for selfies with a lucky few."[2]

13.     Taylor Swift also visited Utah on or about August 6, 2020.[3]

14.     Defendant Taylor Nation, LLC operates an interactive website at *store.taylorswift.com* that allows residents of the state of Utah to purchase goods from Defendants, including goods bearing the EVERMORE Trademark.

15.     Residents of the state of Utah have purchased goods from *store.taylorswift.com*.

16.     Defendants have engaged in the sale of goods bearing unauthorized reproductions of Plaintiff's trademarks in this district.

17.     By virtue of Defendants' extensive commercial activities in this district, Defendants are subject to general jurisdiction in this district.

---

[1] *See* https://seatgeek.com/tba/music/ticket-prices-for-taylor-swift-in-salt-lake-city/.
[2] Lottie E. Johnson and Sarah Harris, *Taylor Swift Brings Star Power to Opening Night of the 2020 Sundance Film Festival in Park City*, Deseret News, January 23, 2020, available at https://www.deseret.com/entertainment/2020/1/23/21077790/taylor-swift-sundance-film-festival-miss-americana-hillary-clinton-lin-manuel-miranda.
[3] Alyssa Ray, *Joe Alwyn Shares Picturesque Photo From His and Taylor Swift's Utah Getaway,* E Online, August 6, 2020, available at https://www.eonline.com/news/1177145/joe-alwyn-shares-picturesque-photo-from-his-and-taylor-swifts-utah-getaway.

18.     In the alternative, Defendants are subject to specific jurisdiction based on sales of goods to residents of Utah bearing the EVERMORE Trademark on the interactive website, *store.taylorswift.com.*

## EVERMORE PARK

19.     Plaintiff operates an immersive experience theme park ("Evermore Park") in which performers who portray fantasy characters are the main attraction.

20.     Evermore's immersive experience includes a wide variety of actors and musicians that create a world of fantasy in which guests interact with performers.

21.     Evermore has invested approximately $37,000,000 in the creation and promotion of Evermore Park and the EVERMORE Trademark.  Exhibit A, Dec. of Ken Bretschneider at ¶ 2.

22.     Much of this investment has come from Mr. Ken Bretschneider, Evermore's CEO, for whom Evermore has been a life-long dream.  As Mr. Bretschneider explained in an interview:

> As a child I always felt escapism was a really important thing . . . .  I grew up in a rough situation, with a very abusive father, but I had the wonderful opportunity of being around other people who were mostly artists.  They helped me escape out of my negative world and embrace a positive one.  That really meant a lot to me and set an important tone through my entire life.[4]

23.     Beginning in 2008, Mr. Bretschneider began hosting a Halloween event for his community at his home in Lindon, Utah, that grew each year until, in 2013, 11,000 people visited Mr. Bretschneider's home.[5]  This was the beginning of Evermore, which hosted its first Halloween event in 2014 and began construction of Evermore Park in 2017.

---

[4] *See* https://www.cladglobal.com/architecture_design_features?codeid=33232.
[5] *See* https://www.heraldextra.com/entertainment/things-to-know-about-the-magic-of-evermore-park-in/collection_747d0b7c-7b2b-5f52-ac97-27538c6ad24c.html#4.

24.     Evermore has attracted wide recognition for its innovative and unique approach to entertainment.  For example, the *LA Times* called Evermore Park the "future of theme parks,"[6] *Time Magazine* named Evermore Park one of the "World's Coolest Places" in 2019,[7] and Evermore's CEO was named one of the top theme park influencers.[8]

25.     *Buzzfeed's* "Bring Me," which reports on travel and entertainment, created a video about Evermore Park that, as of the time of the filing of this action, had been viewed more than 25,000,000 times, as shown in the screen capture below.  The video has also generated more than 65,000 comments from viewers.[9]



26.     Evermore has attracted interest from a major entertainment studio, which is in discussions with Evermore about the creation of other forms of entertainment content, including TV shows, video games, card and board games, books, AR and VR experiences, and music, based on the world of Evermore.

## **EVERMORE'S TRADEMARK RIGHTS**

---

[6] Todd Martens, *Westworld, Ho! Inside Evermore, Where the Future of Theme Parks is Not about Rides but Play*, LA Times, Nov. 9, 2018.  Available at https://www.latimes.com/entertainment/herocomplex/la-et-ms-evermore-future-of-theme-parks-20181109-story.html.

[7] Available at https://time.com/collection/worlds-coolest-places-2019/5736007/evermore-park-pleasant-grove-utah/.

[8]  Available at https://blooloop.com/blooloop-influencers/2020/ken-bretschneider-evermore-2020/.

[9] Available at https://www.facebook.com/buzzfeedbringme/videos/2158614870839140.

27.     Evermore has obtained the following registrations for the EVERMORE

Trademark.  Copies of the trademark registration certificates for the registrations listed below are

attached hereto as Exhibit B.

| Evermore Trademark Registrations | | | |
|---|---|---|---|
| **Trademark** | **Reg. No.** | **Reg. Date** | **Goods and Services** |
| EVERMORE | 4,720,740 | 4/14/2015 | Int.'l Class 25: Coats; Dresses; Hats; Jackets; Pants; Shirts; Shoes; Shorts; Socks; Sweaters. |
| EVERMORE | 5,329,899 | 11/7/2017 | Int.'l Class 41: Providing Halloween themed park services. |
| EVERMORE | 5,617,849 | 11/27/2018 | Int.'l Class 25: Coats; Dresses; Hats; Jackets; Pants; Shorts; Socks; Sweaters. Int.'l Class 41: Amusement parks. |
| EVERMORE | 5,597,168 | 10/30/2018 | Int.'l Class 41: Entertainment services in the nature of live visual and audio performances by an actor; Entertainment services in the nature of augmented reality attractions; Providing theme park services. |

28.     Evermore's investment in developing and promoting the EVERMORE Trademark

includes:

(a) Expending $406,835.00 in advertising and promoting the EVERMORE

Trademark;

(b) Purchasing the domain name EVERMORE.COM at a cost of $300,000.00;

and

(c) Expending $228,587 in direct labor costs for advertising and promoting the

EVERMORE Trademark.

Exhibit A, Dec. of Ken Bretschneider at ¶ 3.

29.     Since opening its doors in 2018, to date, Evermore Park has provided its

entertainment services to 142,784 guests.  Exhibit A, Dec. of Ken Bretschneider at ¶ 4.

30.     Evermore offers clothing items bearing the EVERMORE Trademark.  Some examples of clothing items bearing the EVERMORE Trademark are shown below. Exhibit A, Dec. of Ken Bretschneider at ¶ 5.

EVERMORE Hoodie                              EVERMORE T-Shirt

   

EVERMORE Hat



31.     Evermore also uses the EVERMORE Trademark in connection with goods and services in addition to those specifically enumerated in Evermore's Trademark Registrations. Exhibit A, Dec. of Ken Bretschneider at ¶ 6.

32.     For example, Evermore commissioned the creation of two original music scores that Evermore sells under the EVERMORE Trademark through a variety of outlets, such as Apple Music.[10]  The album artwork for the scores features the EVERMORE Trademark, as shown below. Exhibit A, Dec. of Ken Bretschneider at ¶ 7.

 

33.     Evermore also uses the EVERMORE Trademark in connection with keychains, commemorative coins, postcards, and pins, as shown below. Exhibit A, Dec. of Ken Bretschneider at ¶ 8.

---

[10] See *Evermore Park, Vol. 1: The Soundtrack of Magical Lore (Original Score),* available at https://music.apple.com/us/album/evermore-park-vol-1-soundtrack-magical-lore-original/1442138785?uo=4&app=music; *Evermore Park, Vol. 2: The Soundtrack of Cursed Lore (Original Score)*, available at https://music.apple.com/us/album/evermore-park-vol-2-soundtrack-cursed-lore-original/1438239366.

EVERMORE Keychain

EVERMORE Commemorative Coin





EVERMORE Postcard

EVERMORE Pin





## **DEFENDANTS' ADOPTION OF THE EVERMORE TRADEMARK**

34.     On December 11, 2020, Taylor Swift released an album titled *Evermore* (the "*Evermore* Album").

35.     Taylor Swift's description of the *Evermore* Album echoes descriptions of

Evermore, including mirroring the unique term (*i.e.*, "escapism") used by Ken Bretschneider to

describe Evermore Park.  Specifically, Ms. Swift writes in the booklet that accompanies the

*Evermore* Album:  "I loved the escapism I found in these imaginary/not imaginary tales.  I loved

the ways you welcomed the dreamscapes and tragedies of epic tales of love lost and found."  A

copy of this booklet is attached as Exhibit C.

36.     Prior to Defendants' release of the *Evermore* Album, numerous published

descriptions of Evermore referred to the "epic tales" that play out at Evermore Park, including in

the following:

(a)     *Role Play and Epic Quests at a Utah Theme Park*, Arkansas Democrat

Gazette, Dec. 23, 2018,[11]

(b)     *This Is What Evermore Is Like*, Utah Business Magazine, Aug. 16, 2019

("[w]here else can you freely walk amongst thousands of ancient artifacts,

embark on epic quests, or trade your beloved bow away to a stranger in a

tavern?"),[12] and

(c)     *Evermore: Utah's New Fantasy Theme Park Adds Summer Event*, Amusement

Park News, May 30, 2019 ("Themed like a European village, the park has

buildings, characters, and an 'epic story'").[13]

---

[11] Available at https://www.arkansasonline.com/news/2018/dec/23/the-play-s-the-thing-20181223/.

[12] Available at https://www.utahbusiness.com/evermore-utah/.

[13] Available at https://amusementparkwarehouse.com/newsserver/evermore-utah-apos-s-new-fantasy-theme-park-adds-summer-event-1559174400.

37.     On December 11, 2020, or shortly thereafter, the website operated by Taylor Nation, LLC, *store.taylorswift.com*, began offering the *Evermore* Album in a digital version (with explicit or "clean" lyrics), a CD version (with explicit or "clean" lyrics), a vinyl format, and a cassette format.

38.     The *Evermore* Album includes a song titled *Evermore* and 14 additional songs, six (6) of which include explicit lyrics.  The explicit versions of the *Evermore* Album are provided with the "parental advisory" warning shown below.



39.     On December 11, 2020, or shortly thereafter, the website operated by Taylor Nation, LLC, *store.taylorswift.com*, began offering "Evermore Merch,"[14] at the address: https://store.taylorswift.com/collections/evermore-merch.

40.     The "Evermore Merch" collection offered at *store.taylorswift.com* included the following clothing items:

---

[14] Defendants removed the "Evermore Merch" pages after Plaintiff sent the cease and desist letter attached as Exhibit D; however, all of the same products remain available.

(a)  the "ever and evermore hoodie,"[15]

(b)  the "bandit like me" hoodie,[16]

(c)  the "cowboy like me" pullover,[17]

(d)  the "bluest skies the darkest gray" pullover,[18]

(e)  the "cardigan,"[19]

(f)  the "life was a willow" long sleeve,[20]

(g)  the "forever is the sweetest con" long sleeve,[21]

(h)  the "above the trees" t-shirt,[22]

(i)  the "roots in my dreamland" t-shirt,[23]

---

[15] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=1, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-ever-and-evermore-hoodie.

[16] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=1, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-bandit-like-me-hoodie.

[17] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=2, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-cowboy-like-me-pullover.

[18] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=2, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-bluest-skies-the-darkest-gray-pullover.

[19] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=2, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-cardigan-limited-edition.

[20] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=3, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-life-was-a-willow-long-sleeve.

[21] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=3, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-forever-is-the-sweetest-con-long-sleeve.

[22] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=3, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-above-the-trees-t-shirt.

[23] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=3, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-roots-in-my-dreamland-t-shirt.

(j)  the "in from the snow" beanie,[24] and

(k)  the "tolerate it" socks.[25]

41.     The clothing items sold by Defendants under the EVERMORE Trademark are counterfeit goods because they use a spurious mark that is identical with Plaintiff's Trademark Reg. No. 4,720,740.  *See* 15 U.S.C. § 1127 ("A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.").

42.     The "Evermore Merch" collection also included other items, such as lithographs, candles, cellular phone accessories, and the "fancy shit" mug.[26]

43.     The *Evermore* Album is available through the same outlet as Evermore's own recorded music, namely Apple Music,[27] among others.

44.     On December 10, 2020, Defendant TAS Rights Management, LLC filed eight (8) intent-to-use trademark applications with the United States Patent and Trademark Office ("USPTO") for the trademark TAYLOR SWIFT EVERMORE ALBUM, as listed below.

| Defendants' Trademark Applications | |
| --- | --- |
| **Trademark** | **Serial No.** |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,765 |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,734 |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,709 |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,730 |

---

[24] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=4, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-in-from-the-snow-beanie.

[25] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=4, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-tolerate-it-socks.

[26] Item previously available at https://store.taylorswift.com/collections/evermore-merch?page=5, now available at https://store.taylorswift.com/collections/new-merchandise/products/the-fancy-shit-mug.

[27] *See* https://music.apple.com/us/album/evermore/1544275966.

| TAYLOR SWIFT EVERMORE ALBUM | 90/371,716 |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,767 |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,763 |
| TAYLOR SWIFT EVERMORE ALBUM | 90/371,724 |

45.     On information and belief, Evermore alleges that Defendants or their agents conducted a search of the filings of the USPTO prior to filing the above-listed trademark applications.

46.     On information and belief, Evermore alleges that one or more of Evermore's Trademark Registrations was identified in response to Defendants' search of the filings of the USPTO.

47.     On information and belief, Evermore alleges that Defendants or their agents had actual knowledge of one or more of the Evermore Trademark Registrations prior to December 10, 2020.

48.     On information and belief, Evermore alleges that Defendants or their agents had actual knowledge of Evermore's use of the EVERMORE Trademark prior to December 10, 2020.

49.     On information and belief, Evermore alleges that Defendants or their agents conducted a search on Google.com or other search engine for the term "Evermore" and, as a consequence, had actual knowledge about Evermore.

50.     On information and belief, Evermore alleges that Defendants or their agents visited *www.evermore.com* prior to December 10, 2020.

51.     On information and belief, Evermore alleges that Defendants or their agents chose to adopt the EVERMORE Trademark despite their actual knowledge of Evermore's prior use and registration of the EVERMORE Trademark.

52.     The trademark applications filed by TAS Rights Management, LLC cover each category of item currently being advertised on Evermore Park's website, namely: "ornamental cloth patches,"[28] "three-dimensional plastic ornaments," [29] "purses," "all-purpose carrying bags," "key wallets," and "key pouches."[30]

53.     A screen capture from Evermore Park's website is reproduced below and shows Evermore's offering of "ornamental cloth patches," "three-dimensional plastic ornaments," "purses," "all-purpose carrying bags," "key wallets," and "key pouches" offered under the EVERMORE Trademark.

---

[28] Trademark Application Serial No. 90/371,763.
[29] Trademark Application Serial No. 90/371,730.
[30] Trademark Application Serial No. 90/371,724.



54.     The fact that every item depicted on Evermore's website is explicitly covered by one of Defendants' Trademark Applications is evidence of Defendants' actual knowledge of Evermore's prior adoption and use of the EVERMORE Trademark.

55.     Ms. Swift is an "actor."

56.     Ms. Swift has acted in in numerous films, television series, and videos.

57.     IMDB attributes 64 film credits to Ms. Swift and identifies Ms. Swift as an "actress," and lists 64 videos in which Ms. Swift appeared as an "actress."[31]

58.     Among Ms. Swift's works as an actor is the music video *willow*.[32]

---

[31] *See* https://www.imdb.com/name/nm2357847/?ref_=fn_al_nm_1.
[32] https://www.youtube.com/watch?v=RsEZmictANA&list=PLINj2JJM1jxP3taLik1NA6CFs5L-TD7uw.

59. In the music video *willow*, Ms. Swift emerges from a hole in a tree in a scene that is depicted below.



60.     The above depicted scene mimics the cover art of Evermore's albums, particularly

volume 2, which is reproduced below.



61.     The similarities between the above depicted scene from *willow* and the cover art

of Evermore's album include a large tree, an opening in the trunk of the tree, prominent and

exposed roots, and purple leaves.

62.     On information and belief, Plaintiffs allege that Taylor Swift has offered or is

planning to offer "entertainment services in the nature of live visual and audio performances"

using the EVERMORE Trademark, such as concert performances, television performances, etc.

63.     Such services offered by Defendants under the EVERMORE Trademark are

counterfeits because they use a spurious mark that is identical with Plaintiff's Trademark Reg.

No. 5,597,168.  15 U.S.C. § 1127.

## DEFENDANTS' ADOPTION AND USE OF THE EVERMORE TRADEMARK HAS RESULTED IN ACTUAL CONFUSION

64.     Visitors to Evermore Park asked staff members whether the *Evermore* Album was the result of a collaboration between Evermore and Taylor Swift or some other type of relationship.  Exhibit E, Dec. of Andrea Measom.

65.     Evermore uses Google Analytics to track various metrics related to the website available at *evermore.com*. Exhibit F, Dec. of Jaren Tolman.

66.     On the day that Taylor Swift announced the *Evermore* Album (*i.e.*, December 10, 2020), web traffic on Evermore Park's website, *www.evermore.com*, spiked 330.4% in comparison to traffic on the previous day (*i.e.*, December 9, 2020).  Exhibit G, Page 5 (showing 7,179 visitors on December 10, 2020) and Exhibit G, Page 4 (showing 1,668 visitors on December 9, 2020).



67.     Metrics related to the traffic to *www.evermore.com* after December 10, 2020, deviated substantially from typical traffic.  including a spike in the site's "bounce rate,"[33] a shift

---

[33] The service Evermore uses to monitor its web traffic, Google Analytics, defines "bounce rate" as follows: "Bounce rate is single-page sessions divided by all sessions, or the percentage of all sessions on your site in which users viewed only a single page and triggered only a single request to the Analytics server."  *See* https://support.google.com/analytics/answer/1009409.  Further, Google explains in response to the question of whether a high bounce rate is "a bad thing," "If the success of your site depends on users viewing more than one page, then, yes, a high bounce rate is bad.  For example, if your home page is the gateway to the rest of your site (e.g., news articles, product pages, your checkout process) and a high percentage of users are viewing only your home page, then you don't want a high bounce rate."  *Id.*

in the "channels" through which users arrive at the website, and a change in the mix of new versus returning users.

68.     Selected metrics comparing December 2, 2020 to December 11, 2020 are shown below.

|  | December 2, 2020 Exhibit G, Page 2 | December 11, 2020 Exhibit G, Page 6 | Change[34] |
|---|---|---|---|
| Users | 1,497 | 5,012 | +234.8% |
| Direct Traffic | 31.4% | 73% | +132.5% |
| Bounce Rate | 48.85% | 76.28% | +56.2% |
| Avg. Session Duration | 134 Seconds | 60 Seconds | -55.2% |

69.     Evermore did *not* make any changes to its online marketing efforts during this period that would explain these changes.  Exhibit F, Dec. of Jaren Tolman at ¶ 5.

70.     Users of social media made direct association between Taylor Swift and Evermore Park.  One example is illustrated below.



---

[34] Calculated by subtracting December 2 metric from December 10 metric, and dividing the result by the December 2 metric.  For example, the calculation of the change in the "Users" metric is determined as 5,012-1,497 = 3,515, and 3,515 / 1497 = 234.8%.

### A DELUGE OF ONLINE INFORMATION ABOUT DEFENDANTS AND THE *EVERMORE* ALBUM HAS CROWDED OUT MATERIAL ABOUT EVERMORE

71.     On the first page of search results on Google.com for the term "Evermore," one (1) result relates to Evermore Park, one (1) result directs to a disambiguation page for "Evermore" on Wikipedia, and the remainder of the results relate to the *Evermore* Album and Taylor Swift.  A *google.com* screenshot showing the results of a Google search for the term "Evermore" on January 31, 2021, is attached as Exhibit H.

72.     The first "Knowledge Panel" that appears on Google.com in response to a search for the term "Evermore" relates to the *Evermore* Album and Taylor Swift, knocking the "Knowledge" panel that relates to Evermore Park off a typical high-definition screen.  Exhibit H (showing screen captures on a screen with resolution 1920 x 1080 pixels).

73.     Prior to December 11, 2020, the first page of a search of Google.com for "Evermore" produced a majority of results with content relating to Evermore, including Evermore's social media accounts, news articles about Evermore, and reviews of Evermore Park. Exhibit A, Dec. of Ken Bretschneider at ¶ 9.

74.     The second page of search results on Google.com for the term "Evermore," includes five (5) results relating to the *Evermore* Album and Taylor Swift and only one (1) result relating to Evermore (*i.e.*, Evermore's Facebook page).  A *google.com* screenshot showing the second page of search results of a Google search for the term "Evermore" on January 31, 2021, is attached as Exhibit I.

75.     Evermore will incur additional marketing and promotional costs as it strives to compete with the torrent of information related to the *Evermore* Album and Taylor Swift.

## DEFENDANTS REFUSE TO CEASE AND DESIST FROM THEIR USE OF THE EVERMORE TRADEMARK

76.     Within days of the release of the *Evermore* Album, Evermore sent a cease and desist letter (the "Cease and Desist Letter") to Defendants.  Exhibit D.

77.     Counsel for Defendants responded to the Cease and Desist Letter on December 29, 2020, stating Defendants' refusal to discontinue use of the EVERMORE Trademark, and claiming "[i]f anything, your client's website traffic has actually increased as a result of the release of Ms. Swift's recent album which, in turn could only serve to *enhance* your client's mark." Exhibit J, Ltr. from J. D. Baldridge to J. Cherry dated Dec. 29, 2020, at page 4 (emphasis in original).

78.     Defendants' claim that their use of the EVERMORE Trademark "enhance[s]" Evermore's mark reflects a fundamental misunderstanding of trademark law, and similar arguments have been considered and flatly rejected:

> Plaintiffs argue that Defendant's contention that Plaintiffs are receiving a benefit from Defendant's promotion of its trademark constitutes a misunderstanding of trademark law. The Court agrees.  The Court finds that the loss sustained by a trademark holder from the unauthorized use of its trademarks is the loss of the trademark holder's ability to control its reputation.  In the context of trademark litigation, grounds for irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill, regardless of whether the infringer is putting the mark to a good or favorable use.  As the *Liquid Glass Court*[35] stated "while imitation is the sincerest form of flattery, it is equally true, especially in the context of trademark litigation, that flattery will often get you nowhere."

*Audi v. D'Amato*, 341 F. Supp.2d 734, 746 (E.D. Mich. 2004) (internal citation and quotation marks omitted), *aff'd* 469 F.3d 534, 545 (6th Cir. 2006).

79.     After receiving the Cease and Desist Letter, Defendants changed the title and URL of the "Evermore Merch" pages at *store.taylorswift.com*.  *See* Footnotes 16-27, above.

---

[35] *Liquid Glass Enter. v. Porsche AG*, 8 F. Supp.2d 398, 406 (D.N.J. 1998).

80.     Counsel for Defendants falsely claimed: "contrary to the assertion in your letter, the 'merch' on Ms. Swift's website only contains pictures of Ms. Swift or album lyrics and is not identified as an 'evermore' collection.  Even the URL where this merch is available makes no mention of 'Evermore ….'"  Exhibit J, at page 5.

81.     Cached versions of Defendants' website page showing "all collections," dated December 13, 2020,[36] are available from Archive.org.

82.     The "all collections" page shown on Defendants' website includes "evermore merch," as shown in the following image of *store.taylorswift.com* from Archive.org.



---

[36] Available at https://web.archive.org/web/20201213051212/store.taylorswift.com/collections.

83.     The text in the bottom right corner of the screen that appears when a user hovers the mouse over the "view products" button on the "evermore merch" is enlarged below, and shows "evermore-merch" included in the URL.



https://web.archive.org/web/20201213051212/http://store.taylorswift.com/collections/evermore-merch

84.     *Teen Vogue* reported on December 13, 2020 on Defendants' release of "'evermore' Merch," as shown in the following screen capture.  Exhibit K.[37]



DIA DIPASUPIL/GETTY IMAGES

Shopping

Taylor Swift Releases "evermore" Merch, "willow" Remix

---

[37] *Available at*: https://www.teenvogue.com/story/taylor-swift-evermore-merch-willow-remix.

85.     The claim made by counsel for Defendants that Defendants' website did *not* include "an 'evermore' collection" is false.

86.     The claim made by counsel for Defendants that "[e]ven the URL where this merch is available makes no mention of 'Evermore'" is false.

87.     The false claims made by Defendants and/or Defendants' counsel is an attempt to minimize Defendants' use of the EVERMORE Trademark.

88.     Defendants have also falsely claimed that Evermore is bankrupt, which, even if true, does *not* provide a defense to Evermore's claims of trademark infringement.

89.     In telephone conversations, counsel for Defendants strongly insinuated that Defendants' refusal to address Evermore's claims is at least partially based on the belief that Evermore lacks the financial resources to pursue its claims due to the Coronavirus pandemic.

90.     Counsel for Defendants has made multiple references in written communications to Evermore's "financial difficulties due to the COVID-19 pandemic."  Exhibit L, Ltr. from J. D. Baldridge to J. Cherry, dated January 11, 2021.

91.     In addition, Taylor Swift has repeatedly sought to portray herself in the public as a defender of artists, and, in particular, struggling artists.  For example, Ms. Swift criticized Apple's decision to offer a three-month free trial of Apple Music, stating:  "We don't ask you for free iPhones.  Please don't ask us to provide you with our music for no compensation."[38]

92.     In her recent appearance at the Sundance Film Festival, Ms. Swift spoke about her public battle with her former record label over ownership of music, stating: "Well, I do sleep

---

[38] Hugh McIntrye, *Taylor Swift's Letter To Apple: Stern, Polite, And Necessary*, Forbes, June 21, 2015, available at https://www.forbes.com/sites/hughmcintyre/2015/06/21/taylor-swifts-letter-to-apple-stern-polite-and-necessary/?sh=384c251d113d.

well at night knowing that I'm right, and knowing that in 10 years it will have been a good thing that I spoke about artists' rights to their art …."[39]

93.     Despite her publicly stated concerns for small and struggling artists facing larger and better-funded opponents, such as Apple and the record labels, Ms. Swift now seeks to bury the previously released Evermore albums created by Evermore and misappropriate the EVERMORE Trademark with no compensation to Evermore because the company is facing "financial difficulties due to the COVID-19 pandemic" and cannot afford to engage in protracted litigation.

94.     Defendants' attempts to exploit Evermore's weakened position due to the Coronavirus pandemic is one fact among many that renders this case exceptional.

95.     Defendants are realizing tremendous profits from the *Evermore* Album, which debuted at No. 1 on the Billboard charts, and having sold 720,000 equivalent album units through January 21, 2021.[40]

96.     Defendants' revenue for sales under the EVERMORE Trademark is likely to reach tens of millions of dollars.

## FIRST CLAIM FOR RELIEF
(Trademark Infringement under 15 U.S.C. § 1114(1))

97.     The allegations set forth above are incorporated herein by this reference.

98.     EVERMORE is a duly registered trademark owned by Evermore.

---

[39] Chris Willman, *Taylor Swift: No Longer 'Polite at All Costs,'* Variety, Jan. 21, 2020, available at https://variety.com/2020/music/features/taylor-swift-politics-sundance-documentary-miss-americana-1203471910/.

[40] *Taylor Swift's 'Coney Island' and 'No Body, No Crime' Debut on Airplay Charts, Joining 'Willow'*, Billboard, *Available at* https://www.billboard.com/articles/business/chart-beat/9517376/taylor-swift-evermore-radio-rollout.

99.     Defendants have, without Plaintiff's consent, used and continue to use in commerce reproductions, copies, counterfeits, or colorable imitations of the EVERMORE Trademark.

100.     Defendants' actions have caused actual confusion, mistake, or deception regarding the source, sponsorship, and/or affiliation of Defendants' goods and services.

101.     Defendants' actions are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1114(1).

102.     A likelihood of confusion is determined based upon: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the mark.  *Sally Beauty Co. v. Beautyco, Inc*., 304 F.3d 964, 972 (10th Cir. 2002) (citing *King of the Mountain Sports, Inc. v. Chrysler Corp*., 185 F.3d 1084, 1089-90 (10th Cir. 1999)).

103.     With regard to the first factor, the EVERMORE Trademark Registrations are identical phonetically and in appearance and meaning to the EVERMORE Trademark used by Defendants.  As such, the first factor strongly weighs in Plaintiff's favor.[41]

104.     With regard to the second factor, the EVERMORE Trademark Registrations constitute constructive notice of Plaintiff's claim of ownership of the EVERMORE Trademark. 15 U.S.C. § 1072 ("Registration of a mark on the principal register provided by this chapter or

---

[41] 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 23:20 (5th ed.) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are "open and shut" and do not involve protracted litigation to determine liability for trademark infringement."); *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1984 (2018) ("The slam-dunk evidence of a conceptually strong mark together with the use of identical marks on identical goods is difficult to surmount.").

27

under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof.").

105.    Plaintiff alleges on information and belief that Defendants had actual knowledge of Plaintiff's registration(s) and/or use of the EVERMORE Trademark prior to December 10, 2020.

106.    The Court in *Sally Beauty* states: "[p]roof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion." *Sally Beauty Co., Inc*., 304 F. 3d at 973.  "One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived.  All doubts must be resolved against him." *Id.*

107.    The numerous similarities between Evermore's and Defendants' use of the EVERMORE Trademark point to actual knowledge and copying by Defendants.  Those similarities include:

    a.    Copying Evermore's unique description (*i.e.*, "escapism," "epic tales," etc.);

    b.    Misappropriating multiple elements from the Evermore album cover art in the *willow* music video (*i.e.*, the prominent roots, the opening in the trunk, the purple leaves, etc.); and

    c.    Covering each item offered by Evermore, including oddly specific items, in trademark applications including the EVERMORE Trademark (*i.e.*, "ornamental cloth patches"[42] "three-dimensional plastic ornaments,"[43] etc.).

---

[42] Trademark Application Serial No. 90/371,763.
[43] Trademark Application Serial No. 90/371,730.

108.    As a result of Defendants' constructive knowledge and/or actual knowledge of the EVERMORE Trademark Registrations and disregard of Plaintiff's already established rights, the second factor weighs in Plaintiff's favor.

109.    With regard to the third factor, there is evidence of actual confusion, including (1) inquiries from guests at Evermore Park regarding the *Evermore* Album, (2) substantial fluctuations in Evermore's web traffic on the day the *Evermore* Album was released, and (3) explicit associations by social media users between Taylor Swift and Evermore.

110.    Evidence of actual confusion "is not necessary for a finding of likelihood of confusion, but it bears on the inquiry and is particularly potent."  *Stone Creek, Inc.*, 875 F.3d at 433.  *See also Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Medical Clinic, LLC*, 861 F. Supp.2d 1293 (D. Kan. 2012), *aff'd*, 503 Fed. Appx. 616 (10th Cir. 2012) (granting preliminary injunction and finding timing of dozens of confused customers calling plaintiff just after defendant began heavy advertising campaign "strong" evidence of likely confusion).  The currently available evidence of actual confusion weighs strongly in Plaintiff's favor.

111.    With regard to the fourth factor, both parties offer clothing and recorded music under the EVERMORE Trademark.

112.    Evermore offers "live visual and audio performances by an actor" under the EVERMORE Trademark, and Taylor Swift is likely to begin offering "live visual and audio performances by an actor" under the EVERMORE Trademark to promote the *Evermore* album.

113.    Both parties focus their marketing on the Internet, including through the use of social media.

114.     Both parties offer many of the same goods and services and use the same channels to market their respective goods and services, and, accordingly, the fourth factor weighs in Plaintiff's favor.

115.     With regard to the fifth factor, it is well established that "the price level of the goods or services is an important factor in determining the amount of care the reasonably prudent buyer will use." MCCARTHY at § 23:95.

116.     The cost of the clothing and music sold by both parties under the EVERMORE Trademark is relatively low, and none of the recognized classes of specialized consumers are relevant, and, accordingly, the fifth factor either weighs in Plaintiff's favor as the senior user[44] or is neutral.

117.     With regard to the sixth factor, Plaintiff's EVERMORE Trademark is an arbitrary trademark because it neither suggests nor describes any ingredient, quality, or characteristic of Plaintiff's goods or services.

118.     Plaintiff's EVERMORE Trademark has been extensively promoted and has been featured in promotions that have garnered more than 25,000,000 views online.

119.     Plaintiff has welcomed 142,784 guests to Evermore Park.  Exhibit A, Dec. of Ken Bretschneider at ¶ 4.

120.     Plaintiff has expended $635,421 in advertising and promoting the EVERMORE Trademark, in addition to Plaintiff's expenditure of $300,000 to purchase the domain name EVERMORE.COM.

---

[44] *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979) ("In some cases, of course, as where the products are identical and the marks are identical, the sophistication of buyers cannot be relied upon to prevent confusion.").

121.    The combination of Plaintiff's efforts to promote the EVERMORE Trademark and the inherent distinctiveness of the EVERMORE Trademark establish that the EVERMORE Trademark is strong, and, accordingly, the sixth factor weighs in Plaintiff's favor.[45]

122.    By committing the acts alleged herein, Defendants have intentionally, knowingly, and willfully infringed Plaintiff's EVERMORE Trademark.

123.    Plaintiff has been irreparably harmed in its business as a result of Defendants' infringement.

124.    Plaintiff has lost control over its reputation as a result of Defendants' actions.

125.    Defendants' use of explicit lyrics and marketing of goods using vulgar terms (*e.g.*, the "fancy shit" mug) are inconsistent with Plaintiff's use of the EVERMORE Trademark and marketing efforts.

126.    Plaintiff will continue to suffer irreparable harm unless Defendants are restrained from infringing Plaintiff's EVERMORE Trademark.

127.    As a result of Defendants' intentional, knowing, and willful counterfeiting of Plaintiff's EVERMORE Trademark in connection with clothing, Plaintiff is entitled to statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(2).

128.    Alternatively, Evermore is entitled to damages, treble damages, statutory damages, and the equitable remedy of an accounting for and a disgorgement of all revenues

---

[45] Defendants' arguments that the EVERMORE Trademark is weak is both self-serving and inadequate under established precedent.  MCCARTHY at § 11:76 ("Even weak marks are entitled to protection against subsequent registration or use by another for a very closely similar mark on closely competitive goods or services.  As the predecessor court to the Federal Circuit remarked: 'Confusion is confusion.  The likelihood thereof is to be avoided, as much between 'weak' marks as between 'strong' marks, or as between a 'weak' and a 'strong' mark.").

and/or profits wrongfully derived by Defendants from their infringement of the EVERMORE

Trademark pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
(Common Law Trademark Infringement)

129.    The allegations set forth above are incorporated herein by this reference.

130.    Plaintiff and its predecessors in interest have used the EVERMORE Trademark in

connection with Evermore's goods and services in U.S. commerce since at least April 17, 2014.

131.    As a result of the continued use and sale by Evermore of products and services

under the EVERMORE Trademark and as a result of the experience, care, and service of

Plaintiff, EVERMORE has become associated with Plaintiff's products and services.

132.    Among other things, Plaintiff has offered recorded music in digital format under

the EVERMORE Trademark.

133.    Plaintiff has distributed its music recordings through the same outlet (*i.e.*, Apple

Media) as music offered by Taylor Swift under the EVERMORE Trademark.

134.    Defendants have announced their intent to adopt the EVERMORE Trademark or

confusingly similar variations thereof, in connection with other goods offered by Plaintiff,

including "ornamental cloth patches,"[46] "three-dimensional plastic ornaments,"[47] "purses," "all-

purpose carrying bags," "key wallets," and "key pouches."[48]

135.    Plaintiff adopted and used the EVERMORE Trademark prior to Defendants'

adoption and use of the EVERMORE Trademark.

---

[46] Trademark Application Serial No. 90/371,763.
[47] Trademark Application Serial No. 90/371,730.
[48] Trademark Application Serial No. 90/371,724.

136.   Defendants' acts are likely to cause, and have caused and will continue to cause, confusion as to the source or sponsorship of Defendants' advertisements, products, and services.

137.   Defendants' acts constitute willful infringement of Plaintiff's exclusive rights in the EVERMORE Trademark in violation of the common law.

138.   By reason of Defendants' actions, Plaintiff has suffered irreparable harm.  Unless Defendants are restrained from further infringement of the EVERMORE Trademark, Plaintiff will continue to suffer irreparable harm.

139.   Plaintiff has no remedy at law that will adequately compensate for the irreparable harm it will suffer if Defendants' conduct is allowed to continue.

140.   As a consequence of Defendants' actions, Plaintiff has suffered damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
(Unfair Competition under Utah Code Ann. § 13-5a-102)

141.   The allegations set forth above are incorporated herein by this reference.

142.   Plaintiff and its predecessors in interest have used the EVERMORE Trademark in connection with Evermore's goods and services in U.S. commerce since at least April 17, 2014.

143.   Subsequent to Plaintiff's adoption and use of the EVERMORE Trademark, Defendants began using the EVERMORE Trademark to promote their goods and services.

144.   Defendants' conduct has caused actual confusion in the marketplace regarding the relationship between Plaintiff and Defendants and the source, origin, and sponsorship of Defendants' goods and services.

145.   Defendants engaged in unfair competition in commerce under Utah statutory law, resulting in damages to Plaintiff, including the loss of goodwill and reputation, and, unless enjoined, will cause further irreparable injury, for which Plaintiff has no adequate remedy at law.

146.    Plaintiff is entitled to judgment against Defendants for recovery of its damages, costs, and attorney fees, and if the Court determines that the circumstances are appropriate, punitive damages, pursuant to Utah Code Ann. § 13-5a-103.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

A.    That Defendants, and all of their agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of the injunction, be temporarily, preliminarily, and permanently enjoined from, without permission from Plaintiff:

    1.  using the EVERMORE Trademark, any colorable imitations thereof, or any marks confusingly similar thereto, and

    2.  otherwise deceptively or unfairly competing with Plaintiff;

B.    That Plaintiff be awarded statutory damages in the amount of $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed pursuant to 15 U.S.C. § 1117(c)(2);

C.    Alternatively, that Plaintiff be awarded the equitable remedy of an accounting for and a disgorgement of all revenues and/or profits wrongfully derived by Defendants from their infringement of the EVERMORE Trademark;

D.    That Plaintiff be awarded its costs and fees incurred in this action under 15 U.S.C. § 1117(a)-(b);

E.    Alternatively, that Plaintiff be awarded its costs and fees incurred in this action under Utah Code Ann. § 13-5a-103; and

F.    That Plaintiff be awarded such other further relief to which it may be entitled as a

matter of law or equity, or which the Court determines to be just and proper.

Dated:  February 2, 2021

JARED L. CHERRY
**PHILLIPS WINCHESTER**

By:     /s/ Jared L. Cherry
               *Attorney for Plaintiff*